# EXHIBIT "A"

# NOTE

DECEMBER 19, 2007
[Date]

6348 NORTH 18TH STEET, PHILADELPHIA, PENNSYLVANIA 19141
[Property Address]

## 1.  PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT MORTGAGE, A NEW YORK LIMITED LIABILITY COMPANY
and its successors and assigns.

## 2.  BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of    ONE HUNDRED SEVEN THOUSAND EIGHT HUNDRED FORTY-THREE AND 00/100                        Dollars (U.S.$ 107,843.00        ), plus interest, to the order of Lender.  Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of      SEVEN AND 125/1000
percent (          7.125 %) per year

until the full amount of principal has been paid.

## 3.  PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4.  MANNER OF PAYMENT
**(A)    Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on    FEBRUARY 1, 2008                . Any principal and interest remaining on the first day of JANUARY 1, 2038                    , will be due on that date, which is called the "Maturity Date."

**(B)    Place**
Payment shall be made at    P.O. BOX 9103, UNIONDALE, NEW YORK 11555-9103

or at such other place as Lender may designate in writing by notice to Borrower.

**(C)    Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $  726.56
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D)    Allonge to this Note for Payment Adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.  (Check applicable box.)

☐ Growing Equity Allonge               ☐ Graduated Payment Allonge

☐ Other [specify]

## 5.  BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.  Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Borrower Initials:

## 6.   BORROWER'S FAILURE TO PAY

### (A)   Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                                                                                    percent (                        4.000 %) of the overdue amount of each payment.

### (B)   Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest.  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default.  In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.  This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C)   Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.   WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Note.

_____ (Seal)
WARDIE L. MURDEN                        -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _____
MICHELE SJOLANDER
SENIOR VICE PRESIDENT

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

PAY TO THE ORDER OF
BANK OF AMERICA, N.A.
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

Laurie Meder
LAURIE MEDER
SENIOR VICE PRESIDENT

BY _____ (Seal)
                                                       -Borrower

# ALLONGE TO PROMISSORY NOTE

Without recourse pay to the order of:
COUNTRYWIDE BANK, FSB, 1800 TAPO CANYON RD., SIMI VALLEY, CA
93063

By:

Name: JOSEPH MANSI

Title: DIRECTOR OF OPERATIONS

Company: PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT MORTGAGE
125 JERICHO TURNPIKE, SUITE 500
JERICHO, NEW YORK 11753

Borrower Name: WARDIE L. MURDEN

Property Address: 6348 NORTH 18TH STEET, PHILADELPHIA, PENNSYLVANIA
19141

Loan Amount: $ 107,843.00

Closing Date: DECEMBER 19, 2007

ALLONGE TO PROMISSORY NOTE
08/05/03

DocMagic

# EXHIBIT "B"

*RECORD & RETURN TO:*

TPA Services LLC
654 Sharrotts Rd
Staten Island NY 10309

$M((

This Instrument Prepared By:

After Recording Return To:
PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT MORTGAGE
125 JERICHO TURNPIKE, SUITE 500
JERICHO, NEW YORK 11753

Uniform Parcel Identifier Number:

Property Address:
6348 NORTH 18TH STEET
PHILADELPHIA, PENNSYLVANIA 19141

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

   THIS MORTGAGE ("Security Instrument") is given on    DECEMBER 19, 2007
The mortgagor is    CHARLES MURDEN AND WARDIE L. MURDEN, AS JOINT
TENANTS, AND NOT AS TENANTS IN COMMON

("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee
for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-
2026, tel.
PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT MORTGAGE, A NEW YORK LIMITED LIABILITY          ("Lender")
is organized and existing under the laws of    NEW YORK                           ,
and has an address of    125 JERICHO TURNPIKE, SUITE 500, JERICHO, NEW YORK
11753        .
Borrower owes Lender the principal sum of    ONE HUNDRED SEVEN THOUSAND EIGHT
HUNDRED FORTY-THREE AND 00/100          Dollars (U.S. $  107,843.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on JANUARY 1, 2038        .

Borrower Initials: WLM    CM

FHA PENNSYLVANIA MORTGAGE - MERS
6/96                                    Page 1 of 10          *DocMagic*

This Document Recorded          Doc Id: 51839870
01/15/2008                      Receipt #:
12:09PM                          Rec Fee: 126.50
Doc Code: M    Commissioner of Records, City of Philadelphia

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in    PHILADELPHIA                           County, Pennsylvania:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

which has the address of    6348 NORTH 18TH STEET

[Street]

   PHILADELPHIA               , Pennsylvania        19141         ("Property Address"):
   [City]                                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.  **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in

Borrower Initials:

which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or

Borrower Initials: WLM  GM

change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's

Borrower Initials: _____

FHA PENNSYLVANIA MORTGAGE - MERS
6/96                                        Page 4 of 10                          *DocMag*

opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8.    Fees.** Lender may collect fees and charges authorized by the Secretary.

**9.    Grounds for Acceleration of Debt.**

    (a)    **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

        (i)    Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

        (ii)    Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    (b)    **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

        (i)    All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

        (ii)    The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    (c)    **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    (d)    **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    (e)    **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within    60  DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to    60  DAYS    from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.  Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current

Borrower Initials: _____    _____

foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

Borrower Initials:

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose by judicial proceedings and/or invoke any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided or referred to in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary, and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20. Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**21. Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**22. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**23. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

Borrower Initials: _____  _____  _____  _____  _____

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider      ☐ Graduated Payment Rider      ☐ Growing Equity Rider

☐ Planned Unit Development Rider      ☐ Adjustable Rate Rider      ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider      ☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 10 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

This is a contract under seal and may be enforced under 42 Pa. C.S. Section 5529(b).

_____ (Seal)
CHARLES MURDEN      -Borrower

_____ (Seal)
WARDIE L. MURDEN      -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Witness: ERMINIA DENNIS      Witness:

_____      _____

COMMONWEALTH OF PENNSYLVANIA, *Philadelphia* County ss:

On this, the *19th* day of *December, 2007* , before me,

the undersigned officer, personally appeared CHARLES MURDEN AND WARDIE L. MURDEN

known to me (or satisfactorily proven) to be the person*s* whose name*s* subscribed to the within instrument and acknowledged that executed the same for the purpose herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

```
NOTARIAL SEAL
ERMINIA DENNIS
Notary Public
ABINGTON TWP, MONTGOMERY COUNTY
My Commission Expires Oct 17, 2009
```

_____

_____
Title of Officer

My Commission expires: *10/17/09*

<u>Certificate of Residence of Mortgagee</u>

The undersigned hereby certifies that:  (i) he/she is the Mortgagee or the duly authorized attorney or agent of the Mortgagee named in the within instrument; and (ii) Mortgagee's precise residence is:
125 JERICHO TURNPIKE, SUITE 500
JERICHO, NEW YORK 11753

Witness my hand this *19th* day of *December 2007*

*Carol Morello – TPA Services LLC*

Signature of Mortgagee or Mortgagee's Duly Authorized Attorney or Agent

*Carol Morello – TPA Services LLC*

Type or Print Name of Mortgagee or Mortgagee's Duly Authorized Attorney or Agent

## COMMITMENT FOR TITLE INSURANCE

### SCHEDULE C

All that lot, parcel or property, situated, lying, or being in Philadelphia County, Pennsylvania, being more particularly described as follows:

SITUATE on the Westerly side of 18th Street (60 feet wide) at the distance of 107 feet 10 1/2 inches northwardly from the northerly side of Stenton Avenue (90 feet wide not opened) in the 17th (formerly part of the 50th) Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 18th Street 16 feet 4 inches and extending of that width in length or depth westwardly between parallel lines at right angles to the said 18th Street the northerly line of said lot along the south side of Chelten Avenue (70 feet wide) 75 feet 8 inches, including on the rear end thereof 1/2 of the soil of a certain 12 feet wide driveway extending from the said Stenton Avenue to the said Chelten Avenue.

**TPA Services, LLC**
**654 Sharrotts Road**
**Staten Island, NY 10309**

# EXHIBIT "C"

## LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement") is effective 04/01/2021, between WARDIE L MURDEN, ("Borrower") and Select Portfolio Servicing, Inc., acting on behalf of the owner of the Note, ("Lender"). If Borrower's representations and covenants in Section 1 continue to be true in all material respects, then this Agreement will amend and supplement, as set forth in Section 2, the Note made by the Borrower, dated 12/19/2007, in the original principal sum of $107,843.00 ("Note"). The Mortgage or Deed of Trust ("Security Instrument"), which was entered into as security for the Note, encumbers the real and personal property described in the Security Instrument (defined in the Security Instrument as the "Property"), known as:

6348 N 18TH ST
PHILADELPHIA, PA 19141

The Note and Security Instrument are collectively referred to in this Agreement as the "Loan Documents."

1. Borrower Representations and Covenants.  Borrower certifies, represents, covenants, and agrees as follows:

   a. Borrower is experiencing a financial hardship, and as a result, (i) is in default under the Note or default is imminent, and (ii) Borrower does not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

   b. There has been no impermissible change in the ownership of the Property since Borrower signed the Note.

   c. If requested by Lender, Borrower has provided documentation for all income that they receive.

   d. All documents and information Borrower has provided to Lender in connection with this Agreement, including the documents and information regarding eligibility for this Agreement, are complete, true and correct.

   e. Borrower has made or will make all payments required under a trial modification plan or loan workout plan, if applicable.

   f. The property is neither in a state of disrepair, nor condemned.

   g. Borrower is not a party to any litigation involving the Loan Documents, except to the extent the Borrower may be a defendant in a foreclosure action.

2. The Modification.  If Borrower's representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 04/01/2021 (the "Modification Effective Date") and all late charges that remain unpaid will be waived. Borrower understands that if they fail to make any payments as a precondition to this modification under a workout plan or trial modification plan, this modification will not take effect. The first modified payment will be due on 05/01/2021.

   a. The Maturity Date will be: 10/01/2047.

   b. The modified principal balance of the Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to the account associated with the Note. The new principal balance of the Note will be $112,842.84 (the "New Principal Balance"). Borrower understands that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. Borrower also understands that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

   c. Interest at the rate of 7.000% will begin to accrue on the Interest Bearing Principal Balance as of 04/01/2021 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 05/01/2021. The payment schedule for the modified Note is as follows:

| Months | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|--------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1-318 | 7.00000% | N/A | $781.12 | $236.70, which may adjust periodically | $1,017.82, which may adjust periodically | 05/01/2021 | 318 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore the total monthly payment may change accordingly.

The above terms in this Section 2.c shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate. Interest will be charged on unpaid principal until the full amount of the Principal Balance has been paid. I will pay interest at a yearly rate of 7.000%.

d. Borrower has agreed to establish an escrow account to pay for property taxes and homeowner's insurance and pay a monthly escrow payment in the initial amount of $236.70. Borrower's total monthly payment of principal, interest and escrow will therefore be equal to $1,017.82. Borrower acknowledges that the payments attributable to insurance and taxes are determined by the state taxing authorities and insurance companies and therefore, are subject to change from time to time. Borrower will be notified of any changes.

3. Other Agreements. Borrower and Lender also agree to the following:

   a. This Agreement shall supersede any modification, forbearance, trial period plan, or other workout plan that Borrower previously entered into with Lender.

   b. The Security Instrument and Note, as modified by this Agreement, are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

   c. All terms of the Security Instrument and Note, except as expressly modified by this Agreement, or by the U.S. Bankruptcy Code, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Note and Security Instrument.

   d. Borrower will be bound by and comply with all covenants, agreements, and requirements of the Note as modified by the Agreement and the Security Instrument, including all requirements to make payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Note and Security Instrument.

   e. If any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after receipt of the Lender's request, Borrower will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If Borrower fails to do so, Borrower will be liable for any and all loss or damage which the Lender reasonably sustains as a result of Borrower's failure. At Lender's option, this Agreement will be void and of no legal effect upon notice of such loss, misplacement, misstatement, or inaccuracy. If Borrower elects not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and Borrower will not be eligible for a modification.

   f. The mortgage insurance premiums due from Borrower, if applicable, may increase as a result of the capitalization, which will result in a higher total monthly payment. Furthermore, the date on which Borrower may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

   g. As of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, Borrower agrees as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lender exercises this option, the lender shall give borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days – depending on state law and other requirements – from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on the Borrower.

   h. As of the Modification Effective Date, a buyer of the Property will not be permitted, under any circumstance, to assume the Loan. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

   i. All payment amounts specified in this Agreement assume that payments will be made as scheduled.

   j. If Borrower is in bankruptcy upon execution of this document, Borrower will cooperate fully with Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect, and such terms shall not be modified by this Agreement.

   k. If Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement.

   l. In agreeing to the changes to the original Loan Documents as reflected in this Agreement, Lender has relied upon the truth and accuracy of all of the representations made by Borrower(s), both in this Agreement and in any documentation provided by or on behalf of Borrower(s) in connection with this Agreement. If Lender subsequently determines that such representations or documentation were not truthful or accurate, Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred.

**TAX CONSEQUENCES OF LOAN MODIFICATIONS.** There may be income tax consequences related to this loan modification. Because you will be responsible for paying any income tax due as a result of this loan modification, you may wish to consult a tax advisor before accepting this loan modification.

The Borrower(s) and Lender have signed this Agreement as of the Effective Date.

Borrower Signature: _____          Date: 4/26/21

Borrower Signature: _____          Date: _____

Yanko D. Arreguin
Document Control Officer
Select Portfolio Servicing, Inc. (On behalf of Lender): _____          Date: MAY 0 7 2021

**DIGIMAIL**   APR 2 8 2021

# EXHIBIT "D"

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that "Mortgage Electronic Registration Systems, Inc." hereinafter "Assignor" the holder of the Mortgage hereinafter mentioned, for and in consideration of the sum of ONE DOLLAR ($1.00) lawful money unto it in hand paid by BAC HOME LOANS SERVICING, LP, "Assignee," the receipt whereof is acknowledged, has granted, bargained, sold, assigned, transferred and set over unto the said Assignee, its successors and assigns, ALL THAT CERTAIN Indenture of Mortgage given and executed by WARDIE L. MURDEN and CHARLES MURDEN to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS A NOMINEE FOR PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT MORTGAGE, bearing the date 12/19/2007, in the amount of $107,843.00, together with the Note and indebtedness therein mentioned, said Mortgage being recorded on 01/15/2008 in the County of PHILADELPHIA, Commonwealth of Pennsylvania, in Mortgage Instrument No. 51839870, MIN:

Being Known as Premises: 6348 NORTH 18TH STREET, PHILADELPHIA, PA 19141-1450
BRT No:

The transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to the Assignor. This assignment is solely intended to describe the instrument sold in a manner sufficient to put third parties on public notice of what has been sold.

Also the Bond or Obligation in the said Indenture of Mortgage recited, and all Moneys, Principal and Interest, due and to grow due thereon, with the Warrant of Attorney to the said Obligation annexed. Together with all Rights, Remedies and incidents thereunto belonging. And all its Right, Title, Interest, Property, Claim and Demand, in and to the same:

TO HAVE, HOLD, RECEIVE AND TAKE, all and singular the hereditaments and premises granted and assigned, or mentioned and intended so to be, with the appurtenances unto Assignee, its successors and assigns, to and for its only proper use, benefit and behoof forever; subject, nevertheless, to the equity of redemption of said Mortgagor in the said Indenture of Mortgage named, and his/her/their heirs and assigns therein.

IN WITNESS WHEREOF, the said "Assignor" has caused its Corporate Seal to be herein affixed and these presents to be duly executed by its proper officers this 25th day of _August_____, 20 09

Mortgage Electronic Registration Systems, Inc.

By:
Michele M. Bradford, Assistant Secretary and Vice President

Sealed and Delivered
in the presence of us;

State of Pennsylvania        :
                             : ss.
County of Philadelphia       :

**52113562**
**Page: 1 of 2**
09/02/2009 12:45PM

On this 25th day of _August_____, 20 09 before me, the subscriber, personally appeared Michele M. Bradford, who acknowledged herself to be the Assistant Secretary and Vice President of Mortgage Electronic Registration Systems, Inc., and that she, as such Assistant Secretary and Vice President, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ANGELA M. McFADDEN, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 18, 2013

Stamp/Seal:

Angela M McFadden
Notary Public

The precise address of the within named
Assignee is:
7105 CORPORATE DRIVE
PLANO, TX 75024
By:

After recording return to:
Phelan Hallinan & Schmieg, LLP
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103

August 19, 2009
Document Execution
PHS # 213586

This Document Recorded                        Doc Id: 52113562
09/02/2009                                    Receipt #:
12:45PM                                        Rec Fee: 154.50
Doc Code: A        Commissioner of Records, City of Philadelphia

ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected.

SITUATE on the westerly side of 18th Street (60 feet wide) at the distance of 107 feet 10 1/2 inches northwardly from the northerly side of Stenton Avenue (90 feet wide not opened) in the 17th (formerly part of the 50th) Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 18th Street 16 feet 4 inches and extending of that width in length or depth westwardly between parallel lines at right angles to the said 18th Street the northerly line of said lot along the south side of Chelten Avenue (70 feet wide) 75 feet 8 inches, including on the rear end thereof 1/2 of the soil of a certain 12 feet wide driveway extending from the said Stenton Avenue to the said Chelten Avenue.

BEING NO. 6348 North 18th Street

Tax Parcel # █████████

Under and Subject to certain restrictions.

TOGETHER with the free and common use, right, liberty and privilege of the aforesaid 1/2 soil of the said 12 feet wide driveway as and for a passageway, driveway and occupiers at all times hereafter forever in common with the owners, tenants and occupiers of the other lots of ground bounding thereon and entitled to the sue thereof.

BEING the same premises which S.M.J. Investment Company, a Partnership, by Deed dated May 28, 1996, and recorded June 7, 1996, in the Office of the Recorder of Deeds in and for the County of Philadelphia, Pennsylvania, in Book 0013, Page 396, granted and conveyed unto Charles Murden, in fee.

eRecorded in Philadelphia PA    Doc Id: 52657299
12/04/2014 02:56 PM
Page 1 of 2                          Rec Fee: $220.00
Commissioner of Records    Doc Code: A
State RTT:    Local RTT:

Recording Requested By:
**Bank of America, N.A.**
Prepared By:
**Diana De Avila**
**800-444-4302**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
When recorded mail to:
**Avenue 365**
**C/O Matt Stubbe**
**401 Plymouth Road Suite 550**
**Plymouth Meeting, PA 19462**

DocID#
Tax ID:
Property Address:
**6348 North 18th Street**
**Philadelphia, PA 19141-1450**
Property Location:
**17 Ward City of PHILADELPHIA**

10/1/2014  HUDCAP                        This space for Recorder's use

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **SECRETARY OF HOUSING AND URBAN DEVELOPMENT** whose address is **451 7TH STREET S.W., WASHINGTON, DC 20410** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Beneficiary:          **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT MORTGAGE, A NEW YORK LIMITED LIABILITY, ITS SUCCESSORS AND ASSIGNS**

Mortgagor(s):         **CHARLES MURDEN AND WARDIE L. MURDEN, AS JOINT TENANTS, AND NOT AS TENANTS IN COMMON**

Date of Mortgage:    **12/19/2007**      Original Loan Amount:    **$107,843.00**

Recorded in Philadelphia County, PA on: **1/15/2008**, book N/A, page N/A and instrument number **51839870**

This Mortgage has not been assigned unless otherwise stated below:
Assigned From:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
Assigned To:  BAC HOME LOANS SERVICING, LP,
Recording Date: 9/2/2009 Book/Liber: N/A Page: N/A Instrument Number: 52113562

Property Legal Description:
**FILE NUMBER BLS-PA120407014  ALL THAT LOT, PARCEL OR PROPERTY, SITUATED, LYING, OR BEING IN PHILADELPHIA COUNTY, PENNSYLVANIA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:  SITUATE ON THE WESTERLY SIDE OF 18TH STREET (60 FEET WIDE) AT THE DISTANCE OF 107 FEET 10 1/2 INCHES NORTHWARDLY FROM THE NORTHERLY SIDE OF STENTON AVENUE (90 FEET WIDE NOT OPENED) IN THE 17TH (FORMERLY PART OF THE 50TH) WARD OF THE CITY OF PHILADELPHIA.  CONTAINING IN FRONT OR BREADTH ON THE SAID 18TH STREET 16 FEET 4 INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH WESTWARDLY BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID 18TH STREET THE NORTHERLY LINE OF SAID LOT ALONG THE SOUTH SIDE OF CHELTEN AVENUE (70 FEET WIDE) 75 FEET 8**

INCHES, INCLUDING ON THE REAR END THEREOF 1/2 OF THE SOIL OF A CERTAIN 12 FEET WIDE DRIVEWAY EXTENDING FROM THE SAID STENTON AVENUE TO THE SAID CHELTEN AVENUE.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
__OCT 0 2 2014__

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP

By: _____

Yong Ly
Assistant Vice President

State of **California**
County of **Ventura**

On __OCT 0 2 2014__ before me, _____Shannon M. Mayfield_____, Notary Public, personally appeared _____Yong Ly_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____Shannon M. Mayfield_____
My Commission Expires: _____Jan 5, 2017_____   (Seal)

SHANNON M. MAYFIELD
Commission # 2002964
Notary Public - California
Los Angeles County
My Comm. Expires Jan 5, 2017

I hereby certify that the address of the within named assignee is:
**451 7TH STREET S.W., WASHINGTON, DC 20410**

_____
**Signature**

DocID#

eRecorded in Philadelphia PA   Doc Id: 52660466
12/12/2014 10:47AM   Receipt#

Page 1 of 2                                        Rec Fee: $220.00
Commissioner of Records           Doc Code: A
State RTT:    Local RTT:

Recording Requested By:
**Bank of America, N.A.**
Prepared By:
**Diana De Avila**
**800-444-4302**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
When recorded mail to:
**Avenue 365**
**C/O Matt Stubbe**
**401 Plymouth Road Suite 550**
**Plymouth Meeting, PA 19462**

DocID#
Tax ID:
Property Address:
**6348 North 18th Street**
**Philadelphia, PA 19141-1450**
Property Location:
**17 Ward City of PHILADELPHIA**

10/7/2014 HUDCAPA                              This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **451 7TH STREET S.W., WASHINGTON, DC, 20410** does hereby grant, sell, assign, transfer and convey unto **NEWLANDS ASSET HOLDING TRUST CARE OF U.S. BANK TRUST NATIONAL ASSOCIATION** whose address is **300 DELAWARE AVENUE, 9TH FLOOR, WILMINGTON, DE 19801** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Beneficiary:               **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT MORTGAGE, A NEW YORK LIMITED LIABILITY, ITS SUCCESSORS AND ASSIGNS**

Mortgagor(s):             **CHARLES MURDEN AND WARDIE L. MURDEN, AS JOINT TENANTS, AND NOT AS TENANTS IN COMMON**

Date of Mortgage:   **12/19/2007**     Original Loan Amount:   **$107,843.00**

Recorded in **Philadelphia County, PA** on: **1/15/2008**, book N/A, page N/A and instrument number **51839870**

This Mortgage has not been assigned unless otherwise stated below:
Assigned From: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
Assigned To:    BAC HOME LOANS SERVICING, LP,
Recording Date: 9/2/2009 Book/Liber: N/A  Page: N/A  Instrument Number: 52113562

Property Legal Description:
**FILE NUMBER BLS-PA120407014 ALL THAT LOT, PARCEL OR PROPERTY, SITUATED, LYING, OR BEING IN PHILADELPHIA COUNTY, PENNSYLVANIA, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:  SITUATE ON THE WESTERLY SIDE OF 18TH STREET (60 FEET WIDE) AT THE DISTANCE OF 107 FEET 10 1/2 INCHES NORTHWARDLY FROM THE NORTHERLY SIDE OF STENTON AVENUE (90 FEET WIDE NOT OPENED) IN THE 17TH (FORMERLY PART OF THE 50TH) WARD OF THE CITY OF PHILADELPHIA.  CONTAINING IN FRONT OR BREADTH ON THE SAID 18TH STREET 16 FEET 4 INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH WESTWARDLY BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID 18TH STREET THE NORTHERLY LINE OF SAID LOT ALONG THE SOUTH SIDE OF CHELTEN AVENUE (70 FEET WIDE) 75 FEET 8**

INCHES, INCLUDING ON THE REAR END THEREOF 1/2 OF THE SOIL OF A CERTAIN 12 FEET WIDE DRIVEWAY EXTENDING FROM THE SAID STENTON AVENUE TO THE SAID CHELTEN AVENUE.

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on _12/3/14_

SECRETARY OF HOUSING AND URBAN DEVELOPMENT BY 25 CAPITAL RESIDENTIAL MORTGAGE OPPORTUNITIES MASTER FUND, LLC, ITS ATTORNEY-IN-FACT, BY AVENUE 365 LENDER SERVICES, LLC, ITS DESIGNEE *

By: _____

RICHARD BARBEZAT,

AUTHORIZED SIGNATORY

State of _PA_
County of _Montgomery_

On _12/3/14_ before me, _Sabrina Buckner_, a Notary Public, personally appeared _RICHARD BARBEZAT_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

*Power of Attorney recorded in
Philadelphia County, Pennsylvania as
Doc ID #52810713

WITNESS my hand and official seal.

Notary Public: _____    (Seal)
My Commission Expires: _____

I hereby certify that the address of the within named assignee is:
300 DELAWARE AVENUE, 9TH FLOOR, WILMINGTON, DE 1980[...]

Signature _____

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
SABRINA BUCKNER
Notary Public
PLYMOUTH TWP., MONTGOMERY CNTY
My Commission Expires Nov 12, 2017

DocID#

Exhibit 20 Page 59 of 50 Page 1 of 3    Rec Fee: $224.75

Prepared By:
CARISBROOK ASSET HOLDING TRUST
C/O U.S. BANK TRUST NATIONAL ASSOCIATION
300 DELAWARE AVENUE, 9th FLOOR
WILMINGTON, DELAWARE 19801
WHEN RECORDED RETURN TO:
Westcor Investor Services
600 West Germantown Pike, Suite 450
Plymouth Meeting, Pennsylvania 19462

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, **NEWLANDS ASSET HOLDING TRUST,** located at **C/O U.S. BANK TRUST NATIONAL ASSOCIATION, 300 DELAWARE AVENUE, WILMINGTON, DELAWARE 19801** ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to: **CARISBROOK ASSET HOLDING TRUST,** located at **C/O U.S. BANK TRUST NATIONAL ASSOCIATION, 300 DELAWARE AVENUE, WILMINGTON, DELAWARE 19801** ("ASSIGNEE/GRANTEE") all beneficial interest under that certain MORTGAGE, dated **12/19/2007** and executed by **CHARLES MURDEN AND WARDI L. MURDEN, AS JOINT TENANTS, AND NOT AS TENANTS IN COMMON,** borrower(s) to: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT MORTGAGE,** as original lender, and certain instrument recorded 1/15/2008, in **INSTRUMENT: 51839870,** in the Official Records of **PHILADELPHIA** County, the State of **Pennsylvania,** given to secure a certain Promissory Note in the amount of **$107,843.00,** covering property located at: **6348 NORTH 18TH STREET, PHILADELPHIA, PENNSYLVANIA 19141.**

*Legal Description attached as Exhibit A*

TOGETHER with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part, the real property described therein.

CERTIFICATE OF BUSINESS RESIDENCE: I, Steven Travascio, do certify that the Assignee's precise residence is **C/O U.S. BANK TRUST NATIONAL ASSOCIATION, 300 DELAWARE AVENUE, WILMINGTON, DELAWARE 19801.**
Witness my hand this 14th Day of December, 2017

Dated: 12/14/2017

**ASSIGNOR: NEWLANDS ASSET HOLDING TRUST By: Westcor Land Title Insurance Company, attorney-in-fact for 25 Capital Partners, LLC, its attorney-in-fact**

By: _____

Name:  Steven Travascio

Title:  Authorized Signatory

*Power of Attorney recorded in Philadelphia County,

Pennsylvania as Instrument: 53259101

State of:  Pennsylvania

County of: Montgomery

Before me, **Hannah Joy Sywulak**, duly commissioned Notary Public, on this day personally appeared **Steven Travascio, Authorized Signatory for Westcor Land Title Insurance Company, attorney-in-fact for 25 Capital Partners, LLC, attorney in fact for**NEWLANDS ASSET HOLDING TRUST (known to me (or proved to me on the oath of _____ or through _____) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 14th day of December, 2017.

_____
Notary Public's Signature

Printed Name: Hannah Joy Sywulak

My Commission Expires: 9/25/2021

Commonwealth of Pennsylvania

Notarial Seal
HANNAH JOY SYWULAK – Notary Public
PLYMOUTH TWP, MONTGOMERY COUNTY
My Commission Expires Sep 25, 2021

Property Address: 6348 NORTH 18TH STREET, PHILADELPHIA, Pennsylvania 19141

Original Loan Amount: $107,843.00

Exhibit A

██████████████████████████ ALL THAT LOT, PARCEL OR PROPERTY, SITUATED, LYING, OR
BEING IN PHILADELPHIA COUNTY, PENNSYLVANIA, BEING MORE PARTICULARLY DESCRIBED
AS FOLLOWS:  SITUATE ON THE WESTERLY SIDE OF 18TH STREET (60 FEET WIDE) AT THE
DISTANCE OF 107 FEET 10 1/2 INCHES NORTHWARDLY FROM THE NORTHERLY SIDE OF STENTON
AVENUE (90 FEET WIDE NOT OPENED) IN THE 17TH (FORMERLY PART OF THE 50TH) WARD OF
THE CITY OF PHILADELPHIA.  CONTAINING IN FRONT OR BREADTH ON THE SAID 18TH STREET
16 FEET 4 INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH WESTWARDLY
BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAID 18TH STREET THE NORTHERLY
LINE OF SAID LOT ALONG THE SOUTH SIDE OF CHELTEN AVENUE (70 FEET WIDE) 75 FEET 8
INCHES, INCLUDING ON THE REAR END THEREOF 1/2 OF THE SOIL OF A CERTAIN 12 FEET WIDE
DRIVEWAY EXTENDING FROM THE SAID STENTON AVENUE TO THE SAID CHELTEN AVENUE.

When Recorded Return To:
Meridian Asset Services
3201 34th Street South
Ste 310
Saint Petersburg, FL  33711

## CORPORATE ASSIGNMENT OF MORTGAGE

**Adams, Pennsylvania**
**Mission Global LLC - 25 Capital#:** ▮▮▮▮▮ "MURDEN"

Date of Assignment: June 27th, 2019
Assignor: 25 CAPITAL PARTNERS, LLC AS ADMINISTRATOR OF CARISBROOK ASSET HOLDING
TRUST BY MISSION GLOBAL, LLC. ITS ATTORNEY-IN-FACT
Assignee: DLJ MORTGAGE CAPITAL, INC.

I hereby certify the precise address of the within named Assignor is 300 DELAWARE AVENUE, 9TH
FLOOR, WILMINGTON, DE  19801.

### SEE EXHIBIT "A" ATTACHED

Executed By: CHARLES MURDEN AND WARDIE L. MURDEN, AS JOINT TENANTS, AND NOT AS
TENANTS IN COMMON  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS
MORTGAGEE, AS NOMINEE FOR PREMIUM CAPITAL FUNDING LLC D/B/A TOPDOT MORTGAGE
ITS SUCCESSORS AND ASSIGNS
Dated: 12-19-2007 Recorded: 01-15-2008 as Instrument/Document 51839870, Book/Reel/Liber N/A,
Page/Folio N/A  In the County of Adams, State of Pennsylvania.

Property Address: 6348 NORTH 18TH STREET, PHILADELPHIA, PA  19141 in the City of
PHILADELPHIA

I do certify that the precise address of DLJ MORTGAGE CAPITAL, INC. is 11 MADISON AVENUE,
NEW YORK, NY  10010
Attested By: _____

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $107,843.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained,
and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under
the Security Instrument.

TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee
forever, subject to the terms contained in said Security Instrument.

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

25 CAPITAL PARTNERS, LLC AS ADMINISTRATOR OF CARISBROOK ASSET HOLDING TRUST BY MISSION GLOBAL, LLC. ITS ATTORNEY-IN-FACT
On June 27th, 2019

By: _____
Teresa M. Bryant, Vice President

STATE OF Florida                                    POA WAS RECORDED IN PHILADELPHIA COUNTY, PA,
COUNTY OF Hillsborough       ON 8/5/2019, INST#53546871

On June 27th, 2019, before me, Brian Ferrito, a Notary Public in and for Hillsborough in the State of Florida, personally appeared Teresa M. Bryant, Vice President of 25 CAPITAL PARTNERS, LLC AS ADMINISTRATOR OF CARISBROOK ASSET HOLDING TRUST BY MISSION GLOBAL, LLC. ITS ATTORNEY-IN-FACT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Brian Ferrito
Notary Expires: 8/28/2019   #FF 226857

BRIAN FERRITO
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF226857
Expires 8/28/2019

## EXHIBIT "A"

All that lot, parcel or property, situated, lying, or being in Philadelphia County, Pennsylvania, being more particularly described as follows:

SITUATE on the Westerly side of 18th Street (60 feet wide) at the distance of 107 feet 10 1/2 inches northwardly from the northerly side of Stenton Avenue (90 feet wide not opened) in the 17th (formerly part of the 50th) Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 18th Street 16 feet 4 inches and extending of that width in length or depth westwardly between parallel lines at right angles to the said 18th Street the northerly line of said lot along the south side of Chelten Avenue (70 feet wide) 75 feet 8 inches, including on the rear end thereof 1/2 of the soil of a certain 12 feet wide driveway extending from the said Stenton Avenue to the said Chelten Avenue.

**Assignment Chain**

| | |
|---|---|
| Assigned From: | NEWLANDS ASSET HOLDING TRUST |
| To: | CARISBROOK ASSET HOLDING TRUST |
| AOM Recorded: | 12/18/2017 |
| AOM Recording Details: | Book: N/A; Page: N/A; DocumentNo: 53304834 |

Prepared By and Return To:
**Murat Deniz**
Meridian Asset Services, LLC
140 Fountain Parkway N Suite 100
St. Petersburg, FL 33716
(239) 351-2442

_____ Space above for Recorder's use _____

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **DLJ MORTGAGE CAPITAL, INC. BY SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT**, whose address is **C/O SELECT PORTFOLIO SERVICING, INC., 3217 SOUTH DECKER LAKE DRIVE, WEST VALLEY CITY, UT 84119**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCAF ACQUISITION TRUST**, whose address is **C/O SELENE FINANCE LP, 3501 OLYMPUS BLVD., SUITE 500, DALLAS, TX 75019**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **12/19/2007**
Original Loan Amount: **$107,843.00**
Executed by (Borrower(s)): **CHARLES MURDEN & WARDIE L. MURDEN**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR PREMIUM CAPITAL FUNDING, LLC D/B/A TOPDOT MORTGAGE, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book/Liber/Volume N/A, Page N/A
Document/Instrument No: 51839870 in the Recording District of **Philadelphia**, **PA**, Recorded on 1/15/2008.

Legal Description & Chain Exhibit:  SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **6348 NORTH 18TH STREET, PHILADELPHIA, PENNSYLVANIA 19141**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ MAY 1 9 2025

DLJ MORTGAGE CAPITAL, INC. BY SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT

By: _____
       Mindy Sandoval
Title: _____
       Document Control Officer

Witness Name: _____
       Jennifer C. Brown

I hereby certify the precise address of the within named **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCAF ACQUISITION TRUST** (*Assignee*) *is* **C/O SELENE FINANCE LP, 3501 OLYMPUS BLVD., SUITE 500, DALLAS, TX 75019.**    Mindy Sandoval

---

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of _____ **Utah**
County of _____ **Salt Lake**

On **MAY 1 9 2025** _____, before me, _____ **LISA FISH** _____, a Notary Public, personally appeared _____ **Mindy Sandoval    Document Control Officer** _____ of/for **SELECT PORTFOLIO SERVICING, INC., AS ATTORNEY-IN-FACT FOR DLJ MORTGAGE CAPITAL, INC.,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under PENALTY OF PERJURY under the laws of the State of **Utah** that the foregoing paragraph is true and correct.  I further certify **Mindy Sandoval** _____, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): _____ **LISA FISH**
My commission expires: **JUL 1 3 2025**

LISA FISH
Notary Public  State of Utah
My Commission Expires on:
July 13, 2025
Comm. Number: 718970

SELECT PORTFOLIO SERVICING, INC.
Corporate
1989
SEAL
UTAH

## EXHIBIT "A"

All that lot, parcel or property, situated, lying, or being in Philadelphia County, Pennsylvania, being more particularly described as follows:

SITUATE on the Westerly side of 18th Street (60 feet wide) at the distance of 107 feet 10 1/2 inches northwardly from the northerly side of Stenton Avenue (90 feet wide not opened) in the 17th (formerly part of the 50th) Ward of the City of Philadelphia.

CONTAINING in front or breadth on the said 18th Street 16 feet 4 inches and extending of that width in length or depth westwardly between parallel lines at right angles to the said 18th Street the northerly line of said lot along the south side of Chelten Avenue (70 feet wide) 75 feet 8 inches, including on the rear end thereof 1/2 of the soil of a certain 12 feet wide driveway extending from the said Stenton Avenue to the said Chelten Avenue.

### Assignment Chain

| | |
|---|---|
| Assigned From: | 25 CAPITAL PARTNERS, LLC AS ADMINISTRATOR OF CARISBROOK ASSET HOLDING TRUST |
| To: | DLJ MORTGAGE CAPITAL, INC. |
| AOM Recording Details: | Recorded 08/13/2019; Book: N/A; Page: N/A; Instrument: 53550622 |

**EXHIBIT "E"**

L.B.F. 3015.1

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

In re:     Murden, Wardie Lee                    Chapter     13

                                                 Case No.     **25-11344**

                Debtor(s)

# Chapter 13 Plan

---

❏ Original
☑ __**First**___ Amended

Date:     __06/17/2025___

### THE DEBTOR HAS FILED FOR RELIEF UNDER
### CHAPTER 13 OF THE BANKRUPTCY CODE

### YOUR RIGHTS WILL BE AFFECTED

You should have received from the court a separate Notice of the Hearing on Confirmation of Plan, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor to adjust debts. You should read these papers carefully and discuss them with your attorney. **ANYONE WHO WISHES TO OPPOSE ANY PROVISION OF THIS PLAN MUST FILE A WRITTEN OBJECTION** in accordance with Bankruptcy Rule 3015 and Local Rule 3015-4. **This Plan may be confirmed and become binding, unless a written objection is filed.**

### IN ORDER TO RECEIVE A DISTRIBUTION UNDER THE PLAN, YOU
### MUST FILE A PROOF OF CLAIM BY THE DEADLINE STATED IN THE
### NOTICE OF MEETING OF CREDITORS.

| Part 1: | Bankruptcy Rule 3015.1(c) Disclosures |
|---|---|

❏ Plan contains non-standard or additional provisions – see Part 9

❏ Plan limits the amount of secured claim(s) based on value of collateral and/or changed interest rate – see Part 4

❏ Plan avoids a security interest or lien – see Part 4 and/or Part 9

| Part 2: | Plan Payment, Length and Distribution – *PARTS 2(c) & 2(e) MUST BE COMPLETED IN EVERY CASE* |
|---|---|

§ 2(a) Plan payments (For Initial and Amended Plans):

**Total Length of Plan:** ___59___ months.

**Total Base Amount** to be paid to the Chapter 13 Trustee ("Trustee")     **$132,116.00**

Debtor shall pay the Trustee     $1,149.00     per month for ___7___ months and then
Debtor shall pay the Trustee     $2,341.00     per month for the remaining ___53___ months;

**or**

Debtor shall have already paid the Trustee _____ through month number _____ and

then shall pay the Trustee_____per month for the remaining_____months.

☐ Other changes in the scheduled plan payment are set forth in § 2(d)

**§ 2(b) Debtor shall make plan payments to the Trustee from the following sources in addition to future wages (Describe source, amount and date when funds are available, if known):**

**§ 2(c) Alternative treatment of secured claims:**

☑ **None.** If "None" is checked, the rest of § 2(c) need not be completed.

**§ 2(d) Other information that may be important relating to the payment and length of Plan:**

**§ 2(e) Estimated Distribution:**

| | | | |
|---|---|---|---:|
| A. | Total Administrative Fees (Part 3) | | |
| | 1. | Postpetition attorney's fees and costs | $ 5,133.00 |
| | 2. | Postconfirmation Supplemental attorney's fees and costs | $ 0.00 |
| | | Subtotal | $ 5,133.00 |
| B. | Other Priority Claims (Part 3) | | $ 0.00 |
| C. | Total distribution to cure defaults (§ 4(b)) | | $ 14,206.51 |
| D. | Total distribution on secured claims (§§ 4(c) &(d)) | | $ 65,773.10 |
| E. | Total distribution on general unsecured claims (Part 5) | | $ 33,790.65 |
| | | Subtotal | $ 118,903.26 |
| F. | Estimated Trustee's Commission | | $ 13,212.74 |
| G. | Base Amount | | $ 132,116.00 |

**§2 (f) Allowance of Compensation Pursuant to L.B.R. 2016-3(a)(2)**

☑ **By checking this box, Debtor's counsel certifies that the information contained in Counsel's Disclosure of Compensation [Form B2030] is accurate, qualifies counsel to receive compensation pursuant to L.B.R. 2016-3(a)(2), and requests this Court approve counsel's compensation in the total amount of $ 6,633.00 , with the Trustee distributing to counsel the amount stated in §2(e)A.1. of the Plan. Confirmation of the plan shall constitute allowance of the requested compensation.**

| Part 3: | Priority Claims |
|---|---|

**§ 3(a) Except as provided in § 3(b) below, all allowed priority claims will be paid in full unless the creditor agrees otherwise.**

| Creditor | Proof of Claim Number | Type of Priority | Amount to be Paid by Trustee |
|---|---|---|---|
| Cibik Law, P.C. | | Attorney Fees | $5,133.00 |

**§ 3(b) Domestic Support obligations assigned or owed to a governmental unit and paid less than full amount.**

☑ **None.** If "None" is checked, the rest of § 3(b) need not be completed.

**Part 4:        Secured Claims**

**§ 4(a) Secured Claims Receiving No Distribution from the Trustee:**

☑ **None.** If "None" is checked, the rest of § 4(a) need not be completed.

**§ 4(b) Curing default and maintaining payments**

☐ **None.** If "None" is checked, the rest of § 4(b) need not be completed.

The Trustee shall distribute an amount sufficient to pay allowed claims for prepetition arrearages; and, Debtor shall pay directly to creditor monthly obligations falling due after the bankruptcy filing in accordance with the parties' contract.

| Creditor | Proof of Claim Number | Description of Secured Property and Address, if real property | Amount to be Paid by Trustee |
|---|---|---|---|
| Selene Finance LP (Arrearage) | | 6348 N 18th St Philadelphia, PA 19141-1450 | $14,206.51 |

**§ 4(c) Allowed secured claims to be paid in full: based on proof of claim or preconfirmation determination of the amount, extent or validity of the claim**

☑ **None.** If "None" is checked, the rest of § 4(c) need not be completed.

**§ 4(d) Allowed secured claims to be paid in full that are excluded from 11 U.S.C. § 506**

☐ **None.** If "None" is checked, the rest of § 4(d) need not be completed.

The claims below were either (1) incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor(s), or (2) incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.

(1) The allowed secured claims listed below shall be paid in full and their liens retained until completion of payments under the plan.

(2) In addition to payment of the allowed secured claim, "present value" interest pursuant to 11 U.S.C. § 1325(a) (5)(B)(ii) will be paid at the rate and in the amount listed below. *If the claimant included a different interest rate or amount for "present value" interest in its proof of claim, the court will determine the present value interest rate and amount at the confirmation hearing.*

| Name of Creditor | Proof of Claim Number | Description of Secured Property | Allowed Secured Claim | Present Value Interest Rate | Dollar Amount of Present Value Interest | Amount to be Paid by Trustee |
|---|---|---|---|---|---|---|
| Santander Consumer USA, Inc | | 2020 Ford Explorer | $36,315.94 | 9.50% | $9,446.20 | $45,762.14 |
| OneMain Financial | | 2016 BMW X6 | $15,880.31 | 9.50% | $4,130.65 | $20,010.96 |

**§ 4(e) Surrender**

☑ **None.** If "None" is checked, the rest of § 4(e) need not be completed.

**§ 4(f) Loan Modification**

☑ **None.** If "None" is checked, the rest of § 4(f) need not be completed.

(1) Debtor shall pursue a loan modification directly with_____or its successor in interest or its current servicer ("Mortgage Lender"), in an effort to bring the loan current and resolve the secured arrearage claim.

(2) During the modification application process, Debtor shall make adequate protection payments directly to Mortgage Lender in the amount of_____per month, which represents_____(*describe basis of adequate protection payment*). Debtor shall remit the adequate protection payments directly to the Mortgage Lender.

(3) If the modification is not approved by_____(date), Debtor shall either (A) file an amended Plan to otherwise provide for the allowed claim of the Mortgage Lender; or (B) Mortgage Lender may seek relief from the automatic stay with regard to the collateral and Debtor will not oppose it.

---

## Part 5:   General Unsecured Claims

**§ 5(a) Separately classified allowed unsecured non-priority claims**

☑ **None.** If "None" is checked, the rest of § 5(a) need not be completed.

**§ 5(b) Timely filed unsecured non-priority claims**

*(1)* Liquidation Test *(check one box)*

☐ All Debtor(s) property is claimed as exempt.

☑ Debtor(s) has non-exempt property valued at $_____2,544.37_____for purposes of § 1325(a)(4) and plan provides for distribution of $_____33,790.65_____to allowed priority and unsecured general creditors.

(2) Funding: § 5(b) claims to be paid as follows *(check one box)*:

☐ Pro rata

☑ 100%

☐ Other (Describe) _____

---

## Part 6:   Executory Contracts & Unexpired Leases

☑ **None.** If "None" is checked, the rest of § 6 need not be completed.

---

## Part 7:   Other Provisions

**§ 7(a) General principles applicable to the Plan**

(1) Vesting of Property of the Estate *(check one box)*

☑ Upon confirmation

☐ Upon discharge

(2) Subject to Bankruptcy Rule 3012 and 11 U.S.C. §1322(a)(4), the amount of a creditor's claim listed in its proof of claim controls over any contrary amounts listed in Parts 3, 4 or 5 of the Plan. Debtor shall amend the plan or file an objection should a filed unsecured claim render the Plan unfeasible.

(3) Post-petition contractual payments under § 1322(b)(5) and adequate protection payments under § 1326(a)(1)(B),(C) shall be disbursed to the creditors by the debtor directly. All other disbursements to creditors shall be made by the Trustee.

(4) If Debtor is successful in obtaining a recovery in a personal injury or other litigation in which Debtor is the plaintiff, before the completion of plan payments, any such recovery in excess of any applicable exemption will be paid to the Trustee as a special Plan payment to the extent necessary to pay priority and general unsecured creditors, or as agreed by the Debtor and the Trustee and approved by the court.

### § 7(b) Affirmative duties on holders of claims secured by a security interest in debtor's principal residence

(1) Apply the payments received from the Trustee on the pre-petition arrearage, if any, only to such arrearage.

(2) Apply the post-petition monthly mortgage payments made by the Debtor to the post-petition mortgage obligations as provided for by the terms of the underlying mortgage note.

(3) Treat the pre-petition arrearage as contractually current upon confirmation for the Plan for the sole purpose of precluding the imposition of late payment charges or other default-related fees and services based on the pre-petition default or default(s). Late charges may be assessed on post-petition payments as provided by the terms of the mortgage and note.

(4) If a secured creditor with a security interest in the Debtor's property sent regular statements to the Debtor pre-petition, and the Debtor provides for payments of that claim directly to the creditor in the Plan, the holder of the claims shall resume sending customary monthly statements.

(5) If a secured creditor with a security interest in the Debtor's property provided the Debtor with coupon books for payments prior to the filing of the petition, upon request, the creditor shall forward post-petition coupon book(s) to the Debtor after this case has been filed.

(6) Debtor waives any violation of stay claim arising from the sending of statements and coupon books as set forth above.

### § 7(c) Sale of Real Property

☑ **None.** If "None" is checked, the rest of § 7(c) need not be completed.

## Part 8: Order of Distribution

The order of distribution of Plan payments will be as follows:

**Level 1:** Trustee Commissions*
**Level 2:** Domestic Support Obligations
**Level 3:** Adequate Protection Payments
**Level 4:** Debtor's attorney's fees
**Level 5:** Priority claims, pro rata
**Level 6:** Secured claims, pro rata
**Level 7:** Specially classified unsecured claims
**Level 8:** General unsecured claims
**Level 9:** Untimely filed general unsecured non-priority claims to which debtor has not objected

*Percentage fees payable to the standing trustee will be paid at the rate fixed by the United States Trustee not to exceed ten (10) percent. If the Trustee's compensation rate increases resulting in the Plan becoming underfunded, the debtor shall move to modify the Plan to pay the difference.*

## Part 9: Non Standard or Additional Plan Provisions

Under Bankruptcy Rule 3015.1(e), Plan provisions set forth below in Part 9 are effective only if the applicable box in Part 1 of this Plan is checked. Nonstandard or additional plan provisions placed elsewhere in the Plan are void.

☑ **None.** If "None" is checked, the rest of Part 9 need not be completed.

| Part 10: | Signatures |
|---|---|

By signing below, attorney for Debtor(s) or unrepresented Debtor(s) certifies that this Plan contains no nonstandard or additional provisions other than those in Part 9 of the Plan, and that the Debtor(s) are aware of, and consent to the terms of this Plan.

Date:     **06/17/2025**                                          **/s/ Michael A. Cibik**
                                                                    Michael A. Cibik
                                                                    Attorney for Debtor(s)


If Debtor(s) are unrepresented, they must sign below.


Date:                                                              
                                                                    Wardie Lee Murden
                                                                    Debtor

Date:                                                              
                                                                    Joint Debtor

**EXHIBIT "F"**

| Loan Number | ███████ |
| Borrower | WARDIE L MURDEN |
| Payments in POC (Arrea | Principal Due $ 1,573.49 and Intrest due: $6,237.71, Prepetition |
| Case Number | ███████ |
| Filing Date | 4/4/2025 |
| 1st Post Due Date | 5/1/2025 |

| POST-PETITION PAYMENT CHANGES | | | | | | |
|---|---|---|---|---|---|---|
| **EFFECTIVE** | 05/01/25 | | | | | |
| **AMOUNT** | 1061.93 | | | | | |

| Date Received | Amount Received | Payment Amount Due | To/From Suspense | Suspense Balance | Due Date | Comments |
|---|---|---|---|---|---|---|
| | | | | 0.00 | | |
| 6/5/2025 | 1188.00 | 1061.93 | 126.07 | 126.07 | 5/1/2025 | |
| 7/23/2025 | 2123.86 | 1061.93 | 1061.93 | 1188.00 | 6/1/2025 | |
| | | 1061.93 | (1061.93) | 126.07 | 7/1/2025 | |
| 8/20/2025 | 1061.93 | 1061.93 | 0.00 | 126.07 | 8/1/2025 | |
| 9/29/2025 | 1062.00 | 1061.93 | 0.07 | 126.14 | 9/1/2025 | |
| 10/29/2025 | 1062.00 | 1061.93 | 0.07 | 126.21 | 10/1/2025 | |
| | | | 0.00 | 126.21 | | ext due date: 11/01/20 |

| | | | |
|---|---|---|---|
| **Arrears Due** | 11/1/2025 | 1061.93 | |
| | 12/1/2025 | 1061.93 | |
| | 1/1/2026 | 1061.93 | |
| Less suspense: | | (126.21) | |
| **TOTAL:** | | **$3,059.58** | |

## Payoff Calculation Totals (PAY4/PG1)

```
                       AS-OF 01/13/26  PAYOFF CALCULATION TOTALS 01/12/26  04:52:33
NAME WL MURDEN    CONTACT NAME WARDIE L MURDEN
--------------------------------------------------------------------------------
PRINCIPAL BALANCE        106,857.46      ---------- RATE CHANGES ----------
INTEREST 01/13/26          8,972.68      INT FROM    RATE        AMOUNT
PRO RATA MIP/PMI                 .00     11/01/24    7.00000      8,972.68
ESCROW ADVANCE             3,001.41      01/13/26
ESCROW BALANCE                   .00
SUSPENSE BALANCE           1,105.09-
HUD BALANCE                      .00
REPLACEMENT RESERVE              .00
RESTRICTED ESCROW                .00
TOTAL-FEES                     15.00
ACCUM LATE CHARGES         1,171.50
ACCUM NSF CHARGES             40.00
OTHER FEES DUE                   .00
PENALTY INTEREST                 .00
FLAT/OTHER PENALTY FEE           .00     TOTAL INTEREST               8,972.68
CR LIFE/ORIG FEE RBATE           .00     TOTAL TO PAYOFF            122,667.33
RECOVERABLE BALANCE        2,152.13  NUMBER OF COPIES: 1    PRESS PF1 TO PRINT
                                         TOTAL PAGE 2               1,562.24

--------------------------------------------------------------------------------
```

## Payoff Calculation Totals (PAY4/PG2)

```
                       AS-OF 01/13/26  PAYOFF CALCULATION TOTALS 01/12/26  04:52:45
NAME WL MURDEN    CONTACT NAME WARDIE L MURDEN
--------------------------------------------------------------------------------
RREM DEFERRED FEE                .00     ******** INFORMATION ONLY *********
COST RECAPTURE DUE               .00     AMOUNTS INCLUDED IN PAYOFF ELEMENTS
---- PMT DEFERRED BALANCES DUE ----      RREM DEFERRED INT                .00
PMT DEFERRED PRIN          1,562.24
PMT DEFERRED INT                 .00
PMT DEFERRED ESC ADV             .00     ***********************************
PMT DEFERRED CORP AD             .00
PMT DEFERRED FEE                 .00




                                         TOTAL PAGE 1              121,105.09
                                               PAGE 2               1,562.24
                                         TOTAL TO PAYOFF           122,667.33
--------------------------------------------------------------------------------
```

**EXHIBIT "G"**

**Fill in this information to identify your case and this filing:**

| Debtor 1 | **Wardie** | **Lee** | **Murden** |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: **Eastern** District of **Pennsylvania**

Case number _____

☐ Check if this is an amended filing

## Official Form 106A/B

## Schedule A/B: Property                                                                 12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.
   ☑ Yes. Where is the property?

   1.1  **6348 N 18th St**
   Street address, if available, or other description

   **Philadelphia, PA 19141-1450**
   City          State        ZIP Code

   **Philadelphia**
   County

   **What is the property?** Check all that apply.
   ☑ Single-family home
   ☐ Duplex or multi-unit building
   ☐ Condominium or cooperative
   ☐ Manufactured or mobile home
   ☐ Land
   ☐ Investment property
   ☐ Timeshare
   ☐ Other

   **Who has an interest in the property?** Check one.
   ☑ Debtor 1 only
   ☐ Debtor 2 only
   ☐ Debtor 1 and Debtor 2 only
   ☐ At least one of the debtors and another

   Other information you wish to add about this item, such as local property identification number: _____

   Source of Value: **Redfin ($202,781 less 20% closing costs)**

   Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

   Current value of the entire property?        Current value of the portion you own?
   **$162,224.80**                                      **$162,224.80**

   Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

   **Fee Simple**

   ☐ **Check if this is community property** (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here** .................................... ➡ | **$162,224.80** |

### Part 2:    Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

   ☐ No
   ☑ Yes